UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CASEY HOLLINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13CV00039 ACL |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Casey Hollins for a Writ of Habeas

Corpus under 28 U.S.C. § 2254.

### I.  Procedural History

Hollins is currently incarcerated at Southeast Correctional Center in Charleston, Missouri,

pursuant to the Sentence and Judgment of the Circuit Court of the City of St. Louis, Missouri.

(Respt's Ex. B at 94-97.)

The state charged Hollins with two counts of assault in the first degree, two counts of

armed criminal action, and two counts of unlawful use of a weapon for shooting at Tamara

Williams and injuring Lorenzo Phillips.  *Id.* at 21-23.  On June 2, 2009, a jury found Hollins

guilty of the three counts involving Williams, and not guilty of the three counts involving Phillips.

*Id.* at 83-88.  The court sentenced Hollins to concurrent terms of twenty-five years' imprisonment

for the assault in the first degree and armed criminal action counts, and fifteen years'

imprisonment for the unlawful use of a weapon count.  *Id.* at 94-97.

Hollins raised two points on direct appeal of his convictions.  (Respt's Ex. C.)  In his first

point, Hollins argued that the trial court plainly erred and exceeded its jurisdiction in sentencing

Hollins to the Class A felony of assault in the first degree, in that the offense was charged as a

Class B felony in the indictment and was submitted to the jury as a Class B felony. *Id.* at 8. In his second point, Hollins argued that the trial court erred in denying his motion for judgment of acquittal at the close of all evidence on Count I because the state failed to prove beyond a reasonable doubt that Hollins intended to shoot at Williams. *Id.* at 9. The Missouri Court of Appeals granted Hollins's first point on appeal, holding that the trial court erred and exceeded its jurisdiction in sentencing Hollins to the Class A felony of assault in the first degree when the offense was charged as a Class B felony in the indictment and was submitted to the jury as a Class B felony. (Respt's Ex. E at 2.) The court remanded to the trial court with directions to correct the clerical error on the written judgment, changing it to reflect the Class B felony of assault in the first degree. *Id.* at 3. The court denied Hollins's second point on appeal and found that there was sufficient evidence from which the jury could have found that Williams was Hollins's intended target. *Id.* at 4.

Hollins filed a *pro se* motion for post-conviction relief under Rule 29.15. (Respt's Ex. F at 3-30.) After appointment of counsel, Hollins filed an amended post-conviction relief motion and request for evidentiary hearing, in which he alleged the following ineffective assistance of counsel claims: (1) trial counsel was ineffective for failing to object during the cross-examination of Hollins when the prosecutor improperly asked Hollins about a prior arrest for assault in the second degree that had not resulted in a conviction; (2) trial counsel was ineffective for failing to object, or to move to strike, on hearsay and Confrontation Clause grounds, Tamara Williams' testimony that she had heard rumors that Hollins had told others that if Hollins did not get the person responsible for shooting him, he would get Williams; (3) trial counsel was ineffective for failing to submit a lesser-included instruction on the Class C felony of assault in the second degree; and (4) trial counsel was ineffective for failing to object when the prosecutor elicited Tamara Williams' testimony that her neighbors had been grazed by bullets allegedly fired by Hollins. *Id.*

On September 20, 2011, the motion court denied Hollins' amended motion and request for an evidentiary hearing.  *Id.* at 69-73.

Hollins raised the same claims on appeal from the denial of post-conviction relief that he raised in his amended post-conviction motion.  (Respt's Ex. G.)  The Missouri Court of Appeals affirmed the decision of the motion court.  (Respt's Ex. I.)

Hollins filed a Petition in the instant habeas action on January 7, 2013, raising the following grounds for relief: (1) the evidence was insufficient to support his conviction of first degree assault; (2) trial counsel was ineffective for failing to object to the state's cross-examination of him about a prior arrest for an assault charge that did not result in a conviction; (3) trial counsel was ineffective for failing to object on hearsay and Confrontation Clause grounds when Williams stated that she had heard rumors that Hollins wanted to harm her; (4) trial counsel was ineffective for failing to object to Williams' testimony that some of his shots struck additional persons; and (5) trial counsel should have submitted an instruction on the lesser-included offense of assault in the second degree.  (Doc. 1.)

On January 11, 2013, Hollins filed a Motion to Amend Petition (Doc. 5), in which he requested leave to add the following twelve grounds for relief:

(A)   Counsel failed to: investigate, interview, and call Officer Kara Roberts,

(B)   Officer Enoch Chambers, and

(C)   Officer Burgoon;

(D)   Counsel failed to: request a lesser-included instruction of Assault 2nd degree,

(E)   investigate and depose Tamara Williams,

(F)   object to hearsay testimony,

(G)   call Enoch Chambers to impeach Williams with prior inconsistent statements,

(H)   call Kara Roberts to impeach Tamara Williams' prior inconsistent statements,

       (I)   object to prosecutor's questions of an uncharged assault;

       (J)   Prosecutor misconduct (*Brady* violation),

       (K)   Counsel failed to file a discovery motion, and

       (L)   failed to object to introduction of testimony not in evidence and uncharged
           crimes.

*Id.* at 3.   On April 15, 2013, Respondent filed a Response to Order to Show Cause, in which he argued that Hollins' Motion to Amend should be denied because Hollins' claims lack particularized facts, and eight of the proposed claims are procedurally defaulted.   (Doc. 10.) Respondent also argued that all of Hollins' claims raised in the original Petition and the Motion to Amend fail on their merits.   The Court granted Hollins' Motion to Amend, but noted that the Court was not finding that Hollins' new grounds for relief were timely, that they had not been procedurally defaulted, or that they were meritorious.   (Doc. 13.)

## II.  Facts

The Court's summary of the facts below is taken from the decision of the Missouri Court of Appeals on direct appeal.   (Respt's Ex. E at 1-2.)

On June 20, 2008, Hollins drove by the building where Tammy Williams ("Williams") lived, and shouted that he was "healed up", that it was "time for war", and that he was about to get revenge.   Hollins had been shot by a person standing outside Williams' building earlier in the month.   About fifteen minutes after Hollins drove by Williams' house shouting, Williams was standing on her porch when she saw Hollins driving on the street in front of her building in a minivan with the driver's side closest to the building.   Williams could see a gun held partially out the driver's side window, and someone yelled to get down.   Then Williams heard between seven and nine gunshots.

Lorenzo Phillips ("Phillips") was standing next to Williams' car at the time the shots were

fired and was struck in the foot by a bullet.   Two other people were grazed by bullets.

Hollins was charged with Class B felony assault in the first degree, armed criminal action, and Class B felony unlawful use of a weapon.

Hollins' mother, Mariethia Henry ("Henry") and Kimberly Poston ("Poston") testified for Hollins.   They stated that on June 19, 2008, Hollins and Henry were at the Wabash Valley Correctional Center in Indiana where Hollins' brother was receiving a college degree.   They testified that Hollins stayed with Henry in Indiana until June 21, after which Hollins returned to St. Louis.

## III.   Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000).   With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts."

*Id.* at 405.   Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410.   Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

## IV.  Procedural Default

Respondent contends that Hollins procedurally defaulted Grounds A, B, C, E, G, H, J, and K by failing to raise these claims in his amended post-conviction motion.   Hollins argues that, if any of his claims are procedurally defaulted, they may be considered under the exception articulated in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).   Hollins contends that he raised these claims in his *pro se* post-conviction motion.   (Doc. 5.)

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim.   *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)).   Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).   A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is

attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id.* at 1022.

Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court. *Sawyer v. Whitley*, 505 U.S. 333, 338–39 (1992). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,]…' impeded [his] efforts to comply with the State's procedural rule." *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012) (alternations in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

Claims of ineffective assistance of post-conviction appellate counsel cannot constitute cause to excuse a defaulted claim. *Arnold v. Dormire,* 675 F.3d 1082, 1087 (8th Cir. 2012) ("an attorney's negligence in a postconviction proceeding does not establish cause"). However, the United States Supreme Court has held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan,* 132 S. Ct. 1309, 1315 (2012). To meet this narrow exception for establishing cause, Hollins must demonstrate that post-conviction counsel was ineffective under the standards of *Strickland.* Therefore, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez,* 132 S. Ct. at 1318.

Hollins does not allege the factual basis of his claims in his Motion to Amend. Rather, he merely alleges fragments, with no factual support or explanation as to how the alleged error

prejudiced him.   As will be discussed below, even when the Court considers the facts Hollins alleged to support his claim in his *pro se* post-conviction motion, none of his claims are substantial.

To establish an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set forth in *Strickland.*   A habeas petitioner must show his counsel's performance fell below professional standards and that his defense suffered prejudice as a result.   *See Strickland*, 466 U.S. at 694.   In evaluating the performance prong of the *Strickland* test, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances."   *Id.* at 688.   Rather than second-guessing counsel's actions with the benefit of hindsight, the reviewing court must examine counsel's conduct with a high degree of deference.   *Id.* at 689.   Counsel's performance was prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) (quoting *Strickland*, 466 U.S. at 694).

The Court will now examine Hollins' grounds for relief individually to determine whether he has alleged sufficient cause to excuse his procedural default.

### a.       Grounds A, B, C, G, and H

In Grounds A, B, C, G, and H, Hollins claims that trial counsel should have investigated and called Officer Kara Roberts (Grounds A and H), Officer Enoch Chambers (Grounds B and G), and Officer Burgoon (Ground C) to testify about statements made by Williams and about the crime scene.

Officer Roberts authored an Incident Report, in which she reported that Williams stated that she was sitting on her front porch when she observed Hollins start shooting.   (Respt's Ex. F at 12.)   Roberts noted that Williams then dropped to the ground, and heard ten to twenty shots fired.   *Id.*   Roberts indicated that Williams observed Phillips limping in front of her residence.

*Id.* In his *pro se* post-conviction motion, Hollins argued that this report refutes Williams' trial testimony that she was shot at, and lists Williams as a victim of property damage. (Respt's Ex. F at 10.)

Officer Chambers authored a Supplemental Report, in which he indicated that he re-interviewed Williams. *Id.* at 18. Chambers reported that Williams stated that she knew Hollins and that Hollins believed Williams' boyfriend was responsible for shooting him in a previous shooting. *Id.* Chambers indicated that Williams reported that Hollins drove by her residence thirty minutes prior to the shooting and told her he was going to kill her if he could not get her boyfriend. *Id.* Chambers stated that Williams reported she was walking out of her apartment with a friend when Hollins started shooting. *Id.* Hollins argued in his *pro se* post-conviction motion that Williams' statements to Chambers contradicted her trial testimony, in which she testified she was standing on her porch when the shooting began. (Respt's Ex. F at 15.)

Officer Burgoon authored an Evidence Technicians Report, in which he listed the evidence seized at the scene. *Id.* at 21. Hollins argued in his *pro se* motion that Burgoon's testimony would show that the crime occurred at street level. (Respt's Ex. F at 20.)

At trial, Williams testified that, on the day of the crime, Hollins drove by her residence and shouted out that it was time for war and he was going to get revenge. (Respt's Ex. A at 75.) Williams testified that she did not know who Hollins believed had shot him in a previous shooting. *Id.* Williams testified that fifteen to twenty minutes later, she was standing on her front porch when Hollins drove by her residence again and started shooting. *Id.* at 77-80. She stated that Phillips was shot and others in the area were grazed with a bullet. *Id.* at 82.

Defense counsel questioned Williams on cross-examination regarding her account of the events, including her statements to police. *Id.* at 83-126. Williams testified that she had spoken

to multiple officers on the day of the incident, and that she did not remember the names of any of the officers. *Id.* at 85-86. Defense counsel questioned Williams regarding statements she made to police that were inconsistent with her trial testimony, including her statement to Officer Chambers that Hollins believed that Williams' boyfriend was responsible for the shooting (*Id.* at 87-88, 90-94), and her statement to police that Hollins was holding the gun with both hands (*Id.* at 114-17). He also questioned Williams regarding her failure to report to the officers that two of her neighbors had been grazed by a bullet. (*Id.* at 83-86, 98-99, 109.)

The parties stipulated to the admission of the photographs that Officer Burgoon took and a report on the evidence that Officer Burgoon seized. *Id.* at 131-32.

Trial counsel was not ineffective in failing to call Officers Roberts ,Officer Chambers, or Officer Burgoon. The record reveals that defense counsel questioned Williams extensively on cross-examination regarding inconsistent statements made to police. With regard to Officer Burgoon, his photographs and report were admitted. Hollins cannot show that his trial would have been different had defense counsel called these officers to testify. Thus, Hollins has not demonstrated that his post-conviction counsel failed to raise a substantial claim of ineffective assistance of trial counsel. Hollins is, therefore, unable to establish "cause" for his procedural default of Grounds A, B, C, G, or H.

**b. Ground E**

Hollins argues that trial counsel failed to depose Williams. In his *pro se* post-conviction motion, Hollins argued that, if trial counsel had deposed Williams prior to trial, he could have impeached her trial testimony and he would have been prepared for her testimony that two other people had been shot. (Respt's Ex. F at 23.)

As previously discussed, defense counsel aggressively cross-examined Williams regarding her inconsistent statements. Defense counsel specifically questioned Williams

regarding her failure to disclose the other two victims of the shooting to police. (Respt's Ex. A at 83-86, 98-100, 109-10.) Hollins' claim that Williams would have testified regarding the other two victims during a deposition is speculative. Thus, Hollins is unable to demonstrate any prejudice due to defense counsel's failure to depose Williams. Hollins has not demonstrated that his post-conviction counsel failed to raise a substantial claim of ineffective assistance of trial counsel. Hollins is, therefore, unable to establish "cause" for his procedural default of Ground E.

### c.    Ground J

In Ground J, Hollins alleges a *Brady* violation. Because Hollins is not alleging an ineffective assistance of trial counsel claim, *Martinez* does not apply. This claim of trial error should have been raised in Hollins' direct appeal. The ineffective assistance of direct appeal counsel cannot serve as cause to excuse the default, because such ineffectiveness was not raised in the state post-conviction proceedings. *See Murray*, 477 U.S. at 488-89. Thus, Ground J is procedurally defaulted.

### d.    Ground K

In Ground K, Hollins alleges that trial counsel failed to file a discovery motion. In his *pro se* post-conviction motion, Hollins claimed that, had counsel filed a discovery motion, he would have all of the crime scene photos and would have been prepared for trial. (Respt's Ex. F at 28.)

The record reveals that both original counsel and Hollins on his own behalf filed requests for discovery. (Respt's Ex. B at 26-28, 52-53.) The state filed responses, which included all of the police reports and notified counsel that he could make arrangements to view the photographs or receive copies of those photographs on disk. *Id.* at 52-53.

Hollins' claim that trial counsel did not file a discovery request and was therefore not prepared for trial is not supported by the record. Hollins' original attorney filed a discovery

request and received discovery from the State. Trial counsel had obviously received and reviewed this discovery, as he referred to the police reports and other evidence at trial. There is no evidence that trial counsel was unprepared for trial. Trial counsel was not required to file an additional, duplicative, discovery request. Thus, Hollins has not demonstrated that his post-conviction counsel failed to raise a substantial claim of ineffective assistance of trial counsel. Hollins is, therefore, unable to establish "cause" for his procedural default of Ground E.

Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence based on "new reliable evidence that he was innocent of the crime of which he was convicted." *Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010). Hollins has made no such showing of actual innocence. Accordingly, Grounds A, B, C, E, G, H, J, and K remain procedurally defaulted.

## V.  Hollins' Claims

The Court will discuss Hollins' claims in turn. For the reasons discussed below, Hollins' claims fail on their merits.

**1.      Ground One**

In Ground One, Hollins argues that the evidence was insufficient to support his conviction of first degree assault because there was no evidence of intent. Hollins states that his alibi witnesses placed him in Indiana at the time of the crime and the physical evidence contradicted the State's sole witness. Hollins argues that the jury's question shows that the jury had difficulty with this issue.

Hollins raised this claim in his direct appeal. The Missouri Court of Appeals held as follows:

> This Court reviews the sufficiency of the evidence in the light most favorable to the finding of guilt. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). This Court makes all reasonable inferences in support of that finding and

disregards all evidence and inferences contrary to the finding.  *Id.*  Evidence is sufficient to support guilt if a reasonable inference supports guilt even if other "equally valid" inferences do not.  *State v. Freeman*, 269 S.W.3d 422, 424-25 & n. 4 (Mo. banc 2008).  The credibility and weight to be given to testimony is a matter for the fact-finder to determine.  *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002).  The fact-finder may believe all, some, or none of the testimony of any witness.  *Id.*

Defendant first argues that the jury question during deliberation shows that there was insufficient evidence presented to the jury.  During deliberation, the jury asked:

> Does the wording in Count I mean the defendant was trying to kill Tamara Williams or does it mean he was randomly firing with the intent to kill someone?  Also if we find him not guilty of Count I, can we still find him guilty?

The court responded that the jury had to be guided by the instructions given.

However, the question of sufficiency arises before the case is even put to the jury.  *State v. Johnson*, 316 S.W.3d 491, 498 (Mo. App. W.D. 2010).  Rather, sufficiency of evidence is a question of whether or not a case should have been submitted to the jury.  *Id.*  Therefore, we do not find [Hollins]'s first sufficiency argument persuasive.

[Hollins] next argues that because there was no evidence that a bullet came near Williams, there was insufficient evidence that [Hollins] was aiming at Williams.  However, there was evidence that shots were fired near where Williams was standing on the porch, and that Williams had heard [Hollins] make statements about getting revenge.  Further, Williams testified without objection, that she had heard rumors that if [Hollins] didn't hurt the person who had shot him, he was going to hurt Williams.  We find that this is sufficient evidence from which the jury could have found that Williams was [Hollins]'s intended target.  Point denied.

(Respt's Ex. E at 3-4.)

A federal court's review of a sufficiency of the evidence claim "is limited to determining 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Gibbs v. Kemna,* 192 F.3d 1173, 1175 (8th Cir. 1999) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)) (emphasis in original).   "In applying this standard, '[t]he scope of our review…is extremely limited…We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.'" *Sexton v. Kemna*, 278

F.3d 808, 814 (8th Cir. 2002) (quoting *Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994)).

Section 565.050 of the Missouri Revised Statutes provides that "[a] person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." "A person acts knowingly with respect to his conduct when he is aware that his conduct is practically certain to cause that result." *State v. McKinney,* 253 S.W.3d 110, 114 (Mo. Ct. App. 2008) (citing Mo.Rev.Stat. § 562.016.3(2)). This mental state "may be based upon circumstantial evidence or inferred from surrounding facts." *Id.; Mosby v. State,* 236 S.W.3d 670, 677 (Mo. Ct. App. 2007). These surrounding facts may include "conduct that would tend to cause death or serious physical injury." *Mosby*, 236 S.W.3d at 677.

Williams testified that Hollins fired "seven to nine" shots in the direction of her house, striking Phillips, who was standing at the side of Williams' vehicle. *Id.* at 80. Williams stated that the window was rolled down on the vehicle Hollins was driving, and she had no difficulty seeing Hollins' face. *Id.* at 79. Williams further testified that Hollins had expressed his desire to get revenge immediately prior to the shooting. *Id.* at 75. The jury obviously found Hollins' alibi witnesses not to be credible. The question from the jury and any evidence not supporting the verdict are irrelevant when determining the sufficiency of the evidence. Under *Jackson,* after viewing the evidence in the light most favorable to the state, any rational juror could have found that Hollins knowingly attempted to cause serious physical injury to Williams. The determination of the state court was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Further, the state court's decision was not unreasonable in light of the evidence presented during trial. Thus, Ground One will be denied.

**2.      Ground Two**

In Ground Two, Hollins argues that trial counsel should have objected to the State's cross-examination of him about a prior arrest for an assault charge that did not result in a

conviction.

During Hollins' re-direct examination, Hollins testified that he had nothing violent in his criminal history.   (Respt's Ex. A at 183.)   On re-cross examination, the State asked, without objection, if Hollins remembered being charged in St. Louis County with the felony of second degree assault.   *Id.* at 183.   Hollins testified that he was charged with second degree assault, but "it was dismissed.   It was the wrong person."   *Id.*   On further redirect, Hollins again stated that the second degree assault charge was dismissed because the State had charged "the wrong guy." *Id.* at 184.

Hollins raised this claim in his amended post-conviction motion, and in his appeal from the denial of post-conviction relief.   The Missouri Court of Appeals held as follows:

> We cannot conclude, based upon the record that counsel was ineffective
> for failing to object to the prosecutor's questioning of the prior second-degree
> assault charge.   Such an objection would have been non-meritorious because the
> evidence of the prior charge would have been admissible to impeach Hollins'
> statement that he did not have anything "violent" in his history.   Moreover, even
> if counsel could be considered ineffective for failing to object to the prosecutor's
> questioning, Hollins did not suffer prejudice from trial counsel's alleged failure.
> Counsel clarified the charge had been dismissed because Hollins was not the
> individual who committed the crime, and therefore, Hollins cannot show a
> reasonable probability that but for counsel's alleged error, the outcome of the trial
> would have been different.   Thus, the motion court did not clearly err in denying
> Hollins' request for post-conviction relief without an evidentiary hearing.

(Respt's Ex. I at 5.)

The decision of the state appellate court was neither contrary to, nor an unreasonable application of, clearly established federal law.   The court found that, under state evidentiary law, evidence of Hollins' prior assault charge was admissible.   To the extent Hollins is claiming that the state appellate court incorrectly applied state evidentiary law, the claim is not cognizable. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law").

According to Eighth Circuit precedent, counsel is not ineffective under *Strickland* for failing to raise a claim for which a petitioner could not obtain relief. *See, e.g., Burton v. Dormire,* 295 F.3d 839, 846 (8th Cir. 2002) (counsel not ineffective for failing to raise recantation where petitioner could not have obtained relief had counsel raised the issue); *Grubbs v. Delo,* 948 F.2d 1459, 1464 (8th Cir. 1991) (counsel not ineffective for failing to argue a meritless issue). The state appellate court's finding that counsel was not ineffective for making a meritless objection is consistent with federal law. Thus, Ground Two will be denied.

**3.      Ground Three**

In Ground Three, Hollins argues that trial counsel was ineffective for failing to object when Williams testified regarding rumors she had heard about Hollins on hearsay and Confrontation Clause grounds.

The following colloquy occurred on cross-examination:

[Defense Counsel]: So there is no reason [Hollins] wanted to shoot you?

[Williams]: Not if I'm hearing rumors previous before the shooting.

[Defense Counsel]: Not if I'm hearing rumors previous to the shooting. What is that the answer to? What question?

[Williams]: You just said why would he want to shoot at me if me and him didn't have any bad blood before the shooting.

[Defense Counsel]: And your answer was not if I'm hearing rumors prior to—

[Williams]: Because before then I heard rumors that if he didn't get who he thought shot him, he was going to get me.

[Defense Counsel]: So you didn't actually hear that from Casey Hollins. That's something you heard out in the neighborhood?

[Williams]: Yes, sir.

[Defense Counsel]: Okay. And so then you would have wanted to tell that to the police?

(Respt's Ex. A at 89-90.)   Defense counsel returned to this alleged rumor later during

cross-examination, and again asked Williams whether she reported this rumor to the police.   *Id.*

at 100.   During closing argument, defense counsel stated that Williams falsely accused Hollins

of the shooting to protect her boyfriend.   *Id.* at 210.   Counsel argued that Williams' boyfriend

had previously shot Hollins, and Williams sought to protect her boyfriend from retaliation by

Hollins.   *Id.*

Hollins raised this claim in his post-conviction motion and in his appeal from the denial of

post-conviction relief.   The Missouri Court of Appeals denied Hollins' claim, holding as

follows:

> The record in this case refutes Hollins' claim that counsel was ineffective.
> As previously noted, counsel's actions are presumed to be reasonable and any
> challenged action is presumed to be part of counsel's sound trial strategy.
> *Barnett*, 103 S.W.3d at 769.   In some instances, counsel may choose not to object
> to otherwise improper questions for strategic purposes.   *Id.*   Here, while
> Williams' testimony concerning "rumors" she heard may have been inadmissible,
> the record reflects trial counsel's decision not to object to the testimony was sound
> trial strategy.   Counsel used Williams' testimony concerning the rumors to
> impeach her credibility concerning whether she told the police officers about these
> rumors.   Trial counsel attempted to show the jury that Williams lied about the
> identity of the shooter for her own motives, and allowing her to testify about
> alleged "rumors" not corroborated or reported to the police at the time furthered
> counsel's strategy in this regard.   Thus, the motion court did not clearly err in
> denying Hollins' claim for post-conviction relief in this regard without an
> evidentiary hearing.

(Respt's Ex. I at 5-6.)

The decision of the state appellate court is not contrary to or an unreasonable application

of clearly established federal law.   Counsel could have objected to Williams's testimony

regarding the neighborhood rumors on hearsay grounds, but his failure to do so does not

constitute ineffectiveness.   In assessing counsel's performance, courts "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). The Missouri Court of Appeals found that counsel's decision not to object was strategic, in that counsel used Williams' testimony to impeach her credibility regarding her statements to the police, and to support his theory that Williams had a motive to falsely accuse Hollins. This finding was reasonable in light of the facts. Thus, Ground Three will be denied.

**4.      Ground Four**

In Ground Four, Hollins argues that trial counsel was ineffective for failing to object to Williams' testimony that additional persons had been shot. Hollins contends that this was improper testimony of uncharged crimes.

As previously discussed, Williams testified, without objection, that two different neighbors were grazed by bullets fired by Hollins. (Respt's Ex. A at 81.) Williams testified that she started to drive these individuals to the hospital, but she realized that one of her tires was flat so she parked her car down the street from her residence. *Id.* Defense counsel questioned Williams extensively on cross-examination regarding her failure to report to police that others had been injured, whether the individuals had received medical treatment for their alleged injuries, and why the individuals never reported their injuries to authorities. *Id.* at 83-86, 96-100, 109-13. The State did not call these two individuals as witnesses, nor did the State call Phillips. In closing argument, defense counsel claimed that Williams' testimony that bullets struck Phillips and grazed two neighbors was fabricated. *Id.* at 209. Counsel argued that Phillips and the two neighbors did not testify at trial because Hollins did not shoot them. *Id.*

Hollins raised this claim in his post-conviction motion and in his post-conviction appeal. The Missouri Court of Appeals held:

Generally, evidence of uncharged crimes is inadmissible to prove a defendant's propensity to commit the crimes with which he is charged. *State v. Murdock*, 928 S.W.2d 374, 381 (Mo. App. W.D. 1996). However, such evidence may be admitted when it is part of the circumstances or sequence of events surrounding the offense charged. *Id.* In this instance, the evidence is admissible to present a complete and coherent picture of the events. *Id.*

During Williams' testimony at trial, she described the events leading up to and following the shooting. According to Williams, Phillips was standing on the side of her vehicle at the time of the shooting. Thereafter, she saw Phillips had been shot in the foot. Williams further testified two of her neighbors were "grazed" by bullets, and she attempted to drive them to the hospital. As she drove down the street, Williams discovered her tires were flat and she parked the vehicle further down the street. Williams' testimony served to explain the circumstances surrounding the shooting and the sequence of events, as well as why her vehicle was initially in a different location than it was when a photograph of the scene was taken. Thus, any objection to the testimony would likely have been overruled. Counsel will not be considered ineffective for failing to make a nonmeritorious objection. *Worthington v. State*, 166 S.W.3d 566, 581 (Mo. banc 2005).

Furthermore, counsel used Williams' statements concerning the events surrounding the shooting and the alleged uncharged crimes to impeach her credibility. In closing argument, counsel pointed out the inconsistencies in Williams' testimony and the police reports, and specifically argued no evidence supported her contention that anyone else was shot that day. Counsel's strategic decision not to object to Williams' testimony did not constitute ineffective assistance of counsel.

(Respt's Ex. I at 6-7.)

As noted by the Missouri Court of Appeals, the general rule under Missouri law is that evidence of uncharged crimes is inadmissible for the purpose of showing the propensity of the defendant to commit the crime charged. *Harris v. Bowersox,* 184 F.3d 744, 752 (8th Cir.1999), *cert denied,* 528 U.S. 1097 (2000). An exception to this general rule exists, however, "for evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged in order to present a complete and coherent picture of the events that transpired." *Id.* (internal quotation marks and citation omitted). "This standard for admissibility is the same as that used in the federal courts and is in accord with Supreme Court precedent." *Osborne v. Purkett,* 411 F.3d 911, 917 (8th Cir.2005), *cert. denied,* 547 U.S. 1022 (2006).

The decision of the state appellate court was not contrary to or an unreasonable application of clearly established federal law. The Missouri Court of Appeals determined that Williams' testimony explained the shooting and the sequence of events, including why her vehicle had been moved. The testimony was not improper under federal law, as it concerned the circumstances and sequence of events surrounding the shooting. Counsel was not ineffective for failing to make a meritless objection. In addition, counsel used Williams' testimony to impeach her credibility, and to support his theory that her account was fabricated. Thus, Ground Four will be denied.

### 5.    Ground Five

In Ground Five, Hollins argues that trial counsel was ineffective in failing to submit an instruction on the lesser-included offense of assault in the second degree.

The record reveals that defense counsel did not offer any instructions. (Respt's Ex. A at 195.) Defense counsel stated that his decision not to submit instructions was a "matter of trial strategy." *Id.*

Hollins raised this claim in the post-conviction proceedings. The Missouri Court of Appeals held, in relevant part, as follows:

> Section 565.060.1(2) RSMo (Cum. Supp. 2006) states, in relevant part, that a person commits the crime of second-degree assault if he "[a]ttempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument." According to Hollins, the jury could have found Hollins did not attempt to kill or cause serious physical injury to the victims by shooting them, and therefore an instruction on second-degree assault as supported by the evidence. We disagree.
>
> Initially, we note there is some question as to whether the evidence supported Hollins' acquittal of first-degree assault and conviction of second-degree assault given the fact that he shot a gun in the victims' direction nine times. However, even assuming the evidence supported the submission of the instruction on the lesser-included offense of second-degree assault, such an instruction would have been inconsistent with Hollins' defense at trial. Hollins claimed he was not even in St. Louis at the time of the shooting. Instead Hollins testified on his own behalf and presented testimony from his mother and a friend

that he was in Indiana on the date in question. If trial counsel sought an
instruction on second-degree assault, claiming that Hollins did not attempt to kill
the victims or cause serious physical injury to them, but instead merely attempted
to cause or knowingly caused physical injury, it would have been wholly
inconsistent with Hollins' alibi defense at trial. Counsel has no duty to request an
instruction that would undermine the defense presented at trial, and therefore the
failure to request such an instruction did not constitute ineffective assistance of
counsel.

(Respt's Ex. I at 8-9.)

The decision of the Missouri Court of Appeals is not contrary to federal law or an
unreasonable application of the facts. The court's conclusion that counsel was not ineffective
because an instruction on the lesser-included offense would have been inconsistent with Hollins'
alibi defense is fully supported by federal law. *See Neal v. Acevedo*, 114 F.3d 803, 806 (8th Cir.
1997) ("[T]rial counsel's decision not to request the lesser-included offense instruction was
reasonable trial strategy because the instructions would have been inconsistent with [defendant]'s
alibi defense"). Further, Hollins' all-or-nothing strategy was effective as to the counts involving
Phillips. If the jury had received instructions on second degree assault, there is a possibility that
the jury would have found Hollins guilty on the counts involving Phillips. Thus, Hollins cannot
demonstrate a reasonable probability that the outcome of the trial would have been more
favorable to him had counsel requested the lesser-included offense instruction. Accordingly,
Ground Five will be denied.

**Hollins's Additional Claims Asserted in the Amended Petition**

The Court has already found that Grounds A, B, C, E, G, H, J, and K are procedurally
defaulted. The remainder of the claims that were asserted in the Amended Petition are
duplicative of Hollins' original five claims. The Court finds that all of Hollins' claims fail on
their merits.

**Grounds A, B, C, G and H**

In Grounds A, B, C, G, and H, Hollins argues that trial counsel was ineffective for failing to call Officers Chambers, Roberts, and Burgoon. The Court has already determined in the above procedural default analysis that Grounds A, B, C, G, and H lack merit because Hollins is unable to demonstrate prejudice from counsel's failure to call these witnesses. Accordingly, Grounds A, B, C, G, and H will be denied.

**Ground D**

In Ground D, Hollins argues that trial counsel failed to request the instruction for the lesser-included offense of second degree assault. This is the same claim Hollins raised in Ground Five, which the Court found lacked merit. Thus, Ground D will be denied.

**Ground E**

In Ground E, Hollins claims that trial counsel failed to investigate and depose Tamara Williams. The Court has already determined in the procedural default analysis that Ground E lacks merit because Hollins is unable to demonstrate prejudice from counsel's failure to depose Williams. Accordingly, Ground E will be denied.

**Ground F**

In Ground F, Hollins argues that trial counsel failed to object to the hearsay testimony of Williams. This is the same claim raised in Ground Three. Thus, Ground F will be denied.

**Ground I**

In Ground I, Hollins argues that trial counsel failed to object to the prosecutor's questions regarding an uncharged assault. This is the same claim raised in Ground Two. Accordingly, Ground I will be denied.

**Ground J**

In Ground J, Hollins alleges a *Brady* violation. Specifically, Hollins argued in his *pro se* post-conviction motion that the prosecuting attorney failed to disclose to the defense that Williams was going to testify that two additional people were shot.

The Court found that Hollins procedurally defaulted this claim by failing to raise it in his direct appeal. This claim also fails on its merits.

During the cross-examination of Williams, defense counsel indicated that the State did not disclose that Williams alleged there were additional victims. (Respt's Ex. A at 98, 120.) Williams alleged that she did report to unnamed officers that two additional individuals were grazed with bullets. *Id.* at 83-86, 98-100, 108-09. Williams testified that these individuals, "Man-Man" and "Bunky" did not want to get involved in the case. (Tr. 99.)

In *Brady,* the Supreme Court held that due process requires the government to disclose material, exculpatory evidence to the defendant. *Brady v. Maryland,* 373 U .S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999).

Hollins is unable to establish a *Brady* violation. There is no evidence that the prosecutor was aware of this evidence. Even assuming that the prosecution knew about the additional victims due to Williams' testimony that she had disclosed this information to police, Hollins cannot meet the prejudice element of a *Brady* violation. Williams' claim that there were two additional victims could have been used as impeachment evidence. In fact, upon discovering the information, defense counsel did use the testimony to impeach Williams. Counsel questioned Williams extensively on cross-examination regarding her failure to report the additional victims

to officers.   During closing argument, counsel again noted that Williams had never reported the additional victims to law enforcement.   *Id.* at 209.   Counsel also argued that no charges were filed against Hollins with respect to those individuals, and that the individuals did not testify that Hollins shot them.   *Id.*      There was no prejudice to Hollins as a review of the record demonstrates that defense counsel was able to use the information to impeach Williams during trial.

Hollins also argues that the disclosure of Williams' testimony could have been exculpatory, in that the additional victims could have disclosed the "true perpetrator."   (Respt's Ex. F at 27.)   Hollins has not presented any affidavits or any other evidence to support his claim. There is no evidence that these alleged victims were ever located.   Hollins' claim is entirely speculative.   It is just as likely that the additional victims would have implicated Hollins, which would have resulted in additional charges.   Thus, Hollins is unable to demonstrate prejudice due to the State's failure to disclose this information prior to trial.   Ground J will be denied.

**Ground K**

In Ground K, Hollins argues that trial counsel failed to file a discovery request.   The Court has already determined in the procedural default analysis that Ground K lacks merit because Hollins' original attorney filed a discovery request and the State provided discovery to the defense.   Accordingly, Ground K will be denied.

**VI.      Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.   *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999).   A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the

issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Hollins has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of February, 2016.